# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

November 21, 2025

*Application DENIED as moot.  ECF DE is terminated SO ORDERED.*
*Dated:  4/8/2026*

**BY ECF**

P. Kevin Castel
United States District Judge

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
New York, NY 10007

Re:     *United States v. Hector Lopez*, 11 Cr. 568

Dear Judge Castel:

I write to request early termination of Hector Lopez's term of supervised release, which is set to expire in three months. Mr. Lopez has been compliant with the current term of his supervised release, so much so that he has been placed on the low intensity caseload, which has the most minimal reporting requirements.

Although Mr. Lopez struggled at the beginning of his term of supervision, his conduct on supervision since treatment has been excellent – his placement on the low-intensity caseload is a testament to as much. Since the Court imposed a new term of supervision, he has sustained no violations of the terms of his supervision. He has obtained gainful, full-time employment, reconnected with his family, and, after decades of struggle, achieved lasting and stable sobriety. As a result of Mr. Lopez's remarkable progress, Mr. Lopez's probation officer, Amber Wilton, does not oppose his motion for early termination of supervised release.

Mr. Lopez has achieved and exceeded the rehabilitative purpose of supervised release. Mr. Lopez is a caretaker to his elderly mother and granddaughters. He has achieved lasting sobriety and now serves as a mentor for those struggling to achieve sobriety. Additionally, Mr. Lopez has obtained gainful employment and continues to work to advance his career. As such, the defense requests that the Court order early termination of Mr. Lopez's supervised release.

## I.     Background

On October 10, 2012, this Court sentenced Mr. Lopez to 180 months' imprisonment to be followed by five years' supervised release after Mr. Lopez pleaded guilty to one count of Possession with Intent to Distribute Heroin. While incarcerated, Mr. Lopez obtained his G.E.D., and worked as a housekeeper and later supervisor (supervising 20 – 30 other incarcerated people), before programs and employment opportunities at the facility were shut down due to the

1

dangers of the COVID-19 pandemic. Mr. Lopez experienced the fear, isolation, and danger of incarceration during the height of the COVID-19 pandemic.

After his release in March of 2021, Mr. Lopez suffered a relapse into drug use and enrolled in an outpatient treatment program at the Harlem East Life Plan. He later moved to outpatient treatment through SDV in Manhattan at the request of Probation. Mr. Lopez was unable to maintain his sobriety in outpatient treatment at that time and needed additional treatment – he underwent detoxification and entered in-patient treatment at SDV Richmond Hill in September of 2022.

Due to rampant drug use at SDV Richmond Hill, Mr. Lopez left the program in January of 2023. Although Mr. Lopez was committed to achieving his recovery, he felt he could not recover at SDV Richmond Hill. This Court ordered Mr. Lopez to begin in-patient treatment at Su Casa. Mr. Lopez desperately wanted this treatment – he wanted to get better. Unfortunately, while at Su Casa, Mr. Lopez experienced another relapse in an effort to cope with the disintegration of his relationship with his long-term partner, with whom he has since been reunited. On September 13, 2023, this Court ordered Mr. Lopez to enter, participate in, and complete another detoxification program at Serendipity in Brooklyn. Mr. Lopez successfully completed this program. On August 1, 2024, this Court ordered Mr. Lopez to serve an additional term of supervision set to expire on February 28, 2026.

Since then, Mr. Lopez has achieved stable and lasting sobriety. After successfully completing in-patient treatment at Serendipity, Mr. Lopez sought out-patient care and counseling to maintain his hard-fought sobriety. Now, confident in his own sobriety, and recognizing the impact of Serendipity on his life, Mr. Lopez returns to Serendipity on a bi-weekly basis to volunteer his time as a motivational speaker and counselor. Mr. Lopez is an inspiration to those currently struggling to achieve sobriety. To maintain his own sobriety, Mr. Lopez receives methadone treatment (MAT) and continues to attend Narcotics Anonymous meetings as needed.

After completing in-patient drug treatment, Mr. Lopez immediately sought gainful employment. He obtained his Commercial Driver's License at Ferrari Driving School on November 19, 2024, where he excelled. *See Exhibit A, Certificate of Completion from Ferrari Driving School; Exhibit B, Hector Lopez's Resume.* Per the Program Department Manager, Mr. Lopez is "always on time for his training, never missed a lesson, responsible; … a very skillful commercial driver, motivated and a reliable person, with good character." *See Exhibit C, Reference Letter from Ferrari Driving School Program Department Manager.*

At 62 years old, Mr. Lopez has achieved full-time employment as a private commercial driver and is currently seeking employment with the Metropolitan Transit Authority. While he awaits that opportunity, Mr. Lopez maintains full-time employment with Accord Bus Company in Queens, which has been verified through pay stubs. At Accord, Mr. Lopez generally works 50 to 55 hours/week. He is paid $35/hour for this work. He also takes on chartered bus runs as needed. Chartered runs can pay up to $370 per ride, depending on the distance Mr. Lopez is asked to drive and the time he is asked to wait at the destination prior to pick-up. *See, e.g., Exhibit D, timesheet for September 19, 2025, chartered bus run.* Work has been essential to the

maintenance of Mr. Lopez's sobriety and his otherwise successful reentry into society. He likes to get up early, work, and stay busy, and is excited for the opportunity to work as a city bus driver.

Beyond work, Mr. Lopez spends his time caring for his elderly mother, granddaughters aged four and 11, and his two adult children, both of whom reside here in Manhattan. Since his release from BOP custody, Mr. Lopez has lived with his elderly mother in her apartment in Manhattan. Mr. Lopez cares for his mother – cooking, cleaning, taking her to doctor's appointments, and grocery shopping. On his days off of work, he enjoys picking his granddaughters up from school.

Given Mr. Lopez's success on supervision, he was transferred to Probation's Low-Intensity Caseload. As Mr. Lopez has sustained no violations on this current term of supervision and has maintained his sobriety, P.O. Wilton does not oppose his motion for early termination of supervised release.

## II.    <u>Legal Standard</u>

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000); s*ee also* S. Rep. No. 98-225 at 124 (1983) as reprinted in 1984 U.S.C.C.A.N. 3182 (a report from the U.S. Senate Committee responsible for the creation of the federal system of supervised release, stating, in relevant part "The Committee has concluded that the sentencing purposes of incapacitation and punishment would not be served by a term of supervised release – that the primary goal of such a term is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, *or to provide rehabilitation* to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.") (emphasis added).

Section 3583(e) gives the Court authority to terminate supervision at any time after the expiration of one year, if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e).[1] The U.S. Sentencing Commission encourages courts to conduct individualized assessments of a defendant's sentence to determine whether it is warranted to modify, reduce, or enlarge the conditions of supervised release as soon as practicable after a defendant's release from imprisonment.[2] The Commission has noted that post-

---

[1] U.S. Sentencing Commission, *Modification, Early Termination, and Extension of Supervised Release (Policy Statement)* at §5D1.4. This new policy statement encourages a court, as soon as practicable after a defendant's release from imprisonment, to conduct an individualized assessment to determine whether it is warranted to modify, reduce, or enlarge the conditions of supervised release. Additionally, any time after the expiration of one year of supervised release, it encourages a court to terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and the interest of justice. *This Policy Statement went into effect on November 1, 2025.*

[2] It is important to note that "new or unforeseen circumstances" are not required to justify early

sentencing rehabilitative efforts "may provide basis for early termination of supervised release under 18 U.S.C. § 3583(e)(1)." U.S.S.G. § 5K2.19.

When determining whether to grant an application for early termination of a period of supervised release, the Court is instructed to "consider 'the factors set forth in [18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting 18 U.S.C. § 3583(e)); see *also* United States District Court for the Southern District of New York Probation Office, *Early Termination from Supervision* (Aug. 2018) ("[§] 3583(e)(1) does not require 'exceptional conduct' to justify early termination. Instead, a court must simply be satisfied that the termination is warranted and is in the interest of justice.").

Importantly, the Court is not permitted to consider the backward-looking, retributive purposes of the defendant's sentence. *Esteras v. United States*, No. 23-7483, 10 (U.S. June 20, 2025). As the Supreme Court explained in *Esteras*, supervised release is designed to "fulfill[ ] rehabilitative ends" and "provide individuals with postconviction assistance" not to serve as further punishment for the crime of conviction.[3] *Esteras* is an explicit articulation of the position the Court implicitly adopted in *Tapia v. United States*. *See Tapia v. United States*, 563 U.S. 319 (2011) (" … a court may not take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release.").

Supervised release's rehabilitative purpose has been noted by many courts that have addressed the issue. Prior to its clear articulation of this view in *Esteras,* the Supreme Court indicated that, "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The Court further elaborated that supervised release is meant "to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 60 (2000).

The Second Circuit has also independently articulated the rehabilitative purpose of supervised release:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or

---

termination of a period of supervised release. In 2016, the Second Circuit explicitly rejected the idea that early termination must be justified by new or changed circumstances. *See United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (per curiam) ("So long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. §3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant.").

[3] *Esteras* rejected the Second Circuit's position on this question. *See* slip op. 3 n.1 (citing *United States v. Williams*, 443 F.3d 35, 47-48) (2d Cir. 2006)).

> other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, at 124 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3307…Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

*United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015). District courts in this circuit have noted that "[t]he purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *United States v. Trotter*, 321 F. Supp. 3d 337, 339 (E.D.N.Y. 2018). *Trotter* makes clear that "[s]upervised release is designed to assist with rehabilitation, not to punish" and notes that courts are directed by Congress, in most cases, "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id.* at 345. Those who no longer need the rehabilitative purposes of supervised release, then qualify for early termination.

### III. The Interests of Justice and Mr. Lopez's Conduct on Supervision Warrant Early Termination

Early termination is appropriate in Mr. Lopez's case. Mr. Lopez's conduct on supervised release has been excellent, without any violations since he began his most recent term in August 1, 2024. He has obtained full-time employment as a private commercial driver at Accord Bus Company and is in the process of obtaining even more gainful employment with the Metropolitan Transit Authority. Officer Wilton has confirmed that Mr. Lopez is in compliance with all the conditions of supervised release and therefore does not oppose Mr. Lopez's request for early termination. Mr. Lopez's conduct on supervised release "demonstrates that continued court supervision is unnecessary to achieve 'general punishment goals,' as well as the goals of promoting respect for the law, deterring criminal conduct by [Mr. Lopez], and protecting the community from future harm by [him]." *United States v. Noel*, 2021 WL 4033769, at *2 (E.D.N.Y. Sept. 3, 2021). The resources of the Probation Department would be better spent on an individual who needs supervision and can benefit from the services offered by a probation officer—not on Mr. Lopez.

While Mr. Lopez needed Probation's supervision at the outset of his term, the need for further supervision has run its course. Due to Mr. Lopez's exceptionally good behavior while on supervised release, he was transferred to the low-intensity caseload, sending a clear signal that there is a belief on the part of the Probation Office that Mr. Lopez is no longer in need of the resources that their office can provide. *See United States v. Trotter*, 321 F. Supp. 3d 337, 364 (E.D.N.Y. 2018) ("A Low Intensity Unit was created in this district to reduce burdens for some. One of the goals of this program is to permit supervision officers to focus their time and efforts on . . . cases in need of closer supervision, while relieving them of cases that require little supervision. . . . When the assessment indicates that . . . the offender is likely to remain crime free and to comply with all other conditions without further interventions by the officer, the case should be supervised under . . . low intensity standards.").

Early termination of supervised release is a mechanism that courts in this district have employed to terminate unnecessarily lengthy terms of supervised release for individuals who have accomplished the rehabilitative purposes that supervised release was intended to serve. *See, e.g.*, *United States v. Cruz*, 19 Cr. 770 (JMF) (S.D.N.Y. 2025) (granting early termination of supervised release); *United States v. Mangual*, 23 Cr. 429 (JGK) (S.D.N.Y. 2024) (same); *United*

*States v. Grullon*, 23 Cr. 106 (PGG) (S.D.N.Y. 2023) (same); *United States v. Zavala*, 18 Cr. 735 (KPF) (S.D.N.Y. 2023) (same); *United States v. Enriquez*, 20 Cr. 455 (RA) (S.D.N.Y. 2023) (same); *United States v. Sam*, 16 Cr. 184 (JGK) (S.D.N.Y. 2018) (same); *United States v. Cummings*, 06 Cr. 481 (JGK) (S.D.N.Y. 2017) (same); *United States v. Bethea*, 05 Cr. 1234 (DC) (S.D.N.Y. 2015) (same); *see also United States v. Young*, 20 Cr. 201 (KMW) (S.D.N.Y. 2024) (terminating probation early). In granting early termination motions, courts in other districts have similarly recognized the psychological toll of supervision, acknowledging the "significance to defendants of 'being off the papers' and becoming one's own person without reporting requirements and without having to request permission to engage in travel or other activities.  Thus, terminating supervision, i.e., 'the papers,' represents a form of freedom…" *United States v. Roman et al.*, No. 3:06-cr-268-26 (JBA), Order Granting Defendant's Motion for Early Termination of Supervised Release (D. Conn. Jan. 4, 2023) at 2.  Additionally, as Judge Dearie in the Eastern District noted, early termination of supervision is important to "reward [a defendant's] determination to lead a responsible life and the success he has already realized" as it also "remind[s] others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, 2021 WL 535208 (E.D.N.Y. Feb. 12, 2021).  Terminating Mr. Lopez's supervision early would allow him to freely visit his elderly father in Florida, who is currently suffering from dementia, and remove an unnecessary burden from his life as he balances his responsibilities as a full-time commercial driver, caretaker for his elderly mother, and grandfather to his two young granddaughters. Moreover, it would meaningfully send a message to other defendants on supervision – that early termination of supervision is possible with hard work and full compliance.

## IV.    <u>Conclusion</u>

Mr. Lopez's performance on supervision, his stable and gainful employment, and his role as a leader in his community and caretaker for his family demonstrate his successful reintegration into the community. Given Mr. Lopez's success during his current term of supervision, his placement on the low-intensity caseload, and Probation's support, early termination of his supervised release – of which only three months remain – is warranted and in the interest of justice.

Thank you for your time and attention to this matter.

Respectfully Submitted,

*Marisa K. Cabrera*

Marisa K. Cabrera, Esq.
Assistant Federal Defender
Tel.: (212) 417-8730